1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHARD C.,

                        Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

Case No. 3:24-cv-05984-JHC

ORDER AFFIRMING THE
COMMISSIONER'S FINAL
DECISION

**I**
**INTRODUCTION**

     This matter comes before the Court on Plaintiff's Complaint for Review of a Social

Security Disability Decision.  Dkt. # 3.  Plaintiff seeks review of the denial of his application for

Social Security benefits.  He contends that the Administrative Law Judge (ALJ) failed to provide

specific, clear, and convincing reasons for rejecting his symptom testimony and erred in rejecting

part of Dr. Maitreyi Murthy's medical opinion.  For the reasons below, the Court disagrees and

AFFIRMS the Commissioner's final decision.

**II**
**BACKGROUND**

     Plaintiff is 49 years old, attended school through the tenth grade, and previously worked

in positions that involved delivering packages and running heavy equipment.  AR 36–38.  On

1   September 2, 2022, he filed an initial claim for disability based on "Stroke, Marked weakness

2   left side in arm and leg, Vision problems left eye, Headaches, Tunnel vision and spacing,

3   Difficulty walking."  AR 51.

4       On March 15, 2024, the ALJ issued a decision concluding that Plaintiff was not disabled

5   under the Social Security Act since the filing of his application.  AR 27.  As pertinent here, the

6   ALJ determined that Plaintiff has the residual functional capacity to perform:

7           light work as defined in 20 CFR 404.1567(b) except can stand/walk 4 of 8 hours
            and sit 6 of 8 hours.  He can never climb ladders, ropes, or scaffolds.  He can
8           occasionally climb ramps and stairs, frequently balance as defined in the Selected
            Characteristics of Occupations, stoop, kneel, crouch, and crawl.  He can tolerate
9           occasional exposure to extreme cold and vibration, and he can tolerate no exposure
            to hazards, such as unprotected heights and heavy machinery, and should do no
10          driving as part of job duties.  He can understand, remember, and carry out simple
            instructions, can use judgment to make simple work-related decisions, and would
11          be absent 1 day per month.

12  AR 21.  In making this finding, the ALJ found only partially persuasive Plaintiff's symptom

13  testimony and one of Dr. Murthy's reports.  AR 22, 25.  The ALJ concluded that based on

14  Plaintiff's residual functional capacity, he could perform jobs that exist in significant numbers in

15  the national economy and was thus not disabled.  AR 26–27.

16      Plaintiff appealed the ALJ's decision to the Appeals Council, which denied his request

17  for review.  AR 1.  Plaintiff appeals before this Court.

### III
#### DISCUSSION

18
19      "This Court may set aside the Commissioner's denial of Social Security benefits only if

20  the ALJ's decision is based on legal error or not supported by substantial evidence in the record."

21  *Reynoldson v. Comm'r of Soc. Sec.*, 649 F. Supp. 3d 1114, 1118 (W.D. Wash. 2023).  Substantial

22  evidence is evidence that a reasonable mind could accept as enough to support a conclusion.  *See*

23  *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022).  "Where evidence is susceptible to more

than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

A.    Plaintiff's Symptom Testimony

The ALJ did not err in rejecting parts of Plaintiff's symptom testimony.  The Commissioner does not contend that there is evidence of malingering and acknowledges that the specific, clear, and convincing standard applies.  *See* Dkt. # 14 at 2.  Under this standard, an ALJ may reject a claimant's symptom testimony when it is inconsistent with medical evidence "only by offering specific, clear, and convincing reasons for doing so."  *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)).

For an adverse credibility finding to be "specific" and "clear," an ALJ must "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)).  In doing so, the ALJ may consider factors like general techniques of credibility evaluation, the claimant's failure to seek treatment, the claimant's daily activities, and the observations of physicians and third parties about the claimant's symptoms.  *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  In sum, the "standard requires an ALJ to show [their] work."  *Smartt*, 53 F.4th at 499.

The standard for determining whether an ALJ's rejection of a claimant's symptom testimony is "convincing" is less clear.  A divided Ninth Circuit panel described the standard as subsumed under the substantial evidence standard: "to discount a claimant's subjective symptom testimony at step two of the symptom analysis, the substantial evidence standard requires an ALJ to provide specific, clear, and convincing reasons for doing so that comport with this Circuit's

1    precedents." *Ferguson v. O'Malley*, 95 F.4th 1194, 1201 n.3 (9th Cir. 2024).  But whereas in

2    some cases the Ninth Circuit has described the standard as requiring substantial evidence, in

3    others it has called it "the most demanding required in Social Security cases." *Compare*

4    *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) *with Garrison*, 759 F.3d at 1015

5    (citation omitted).  Because the Ninth Circuit describes the clear and convincing standard as "the

6    most demanding required in Social Security cases," it must be at least somewhat more difficult to

7    meet than the substantial evidence standard.  *Garrison*, 759 F.3d at 1015 (citation omitted).  But

8    this does not mean that the standard is onerous.  As the Ninth Circuit has explained, the specific,

9    clear, and convincing "standard isn't whether our court is convinced, but instead whether the

10   ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

11            1.        Frequency of seizures

12            Plaintiff testified that he has seizures "[t]wo to three times a month."  AR 38.  The ALJ

13   rejected this testimony:

> The claimant's testimony concerning the frequency of seizures is not consistent
> with the record.  He testified he has seizures 2 or 3 times a month, but his
> neurologist[, Dr. Murthy,] reports his seizures occur zero to once a month and
> indicates that he had 3 seizures in the last 4 months [citing AR 507].  The seizure
> precautions and once per month absences in the residual functional capacity finding
> adequately account for his seizures.

AR 22–23.

            Plaintiff says that the ALJ should have considered other aspects of the record that support

his testimony.  He cites a March 6, 2023 progress report in which Dr. Murthy observed, "He has

had 2 episodes of intermittent numbness of his tongue last week-twice probably within the same

week," and noted, "I wonder whether the patient had 2 breakthrough seizures."  AR 394–96.  He

also says that he had "two breakthrough seizures within a month," citing a September 28, 2023

progress note in which Dr. Murthy observed that he "[h]ad 2 breakthrough seizures about 4

1   weeks ago, and then 2 weeks." Dkt. # 10 at 9 (citing AR 456). Against this evidence, the

2   Commissioner cites the same report by Dr. Murthy that the ALJ relied on, which was completed

3   that same day, September 28, 2023. AR 510. In that report, Dr. Murthy stated that Plaintiff has

4   "0-1" seizures per month, and that the dates of his last three seizures were "05/24/23,"

5   "08/20/23," and "09/07/23." AR 507.

6          The ALJ's reliance on Dr. Murthy's report indicating that Plaintiff has "0-1" seizures per

7   month and listing the dates of his recent seizures is a specific, clear, and convincing reason for

8   rejecting Plaintiff's testimony that he has two or three seizures a month. "Contradiction with the

9   medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*

10  *v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). To be sure, not all

11  inconsistencies between symptom testimony and medical evidence suffice to affirm an ALJ's

12  rejection of a claimant's testimony. *See Glanden v. Kijakazi*, 86 F.4th 838, 846 (9th Cir. 2023).

13  But such inconsistencies may suffice when the overall record does not suggest that the ALJ has

14  erred. *Cf. id.* at 847 ("The longitudinal record tends to vindicate [the claimant's] pain

15  allegations."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1037 (9th Cir. 2007) (reversing an ALJ's

16  adverse credibility finding because, contrary to the ALJ's rationale, "there was not a consensus

17  of medical opinion that [the claimant] retained the capacity to perform sedentary work.").

18         Plaintiff asserts that his "allegation that he has at least two seizures per month is an

19  average and is not inconsistent with the medical evidence or even his own testimony due to the

20  fluctuation in frequency." Dkt. # 15 at 4. But he provides no evidence that the average should

21  be two or three seizures a month rather than zero or one. For example, he concedes that he had

22  "no reported seizures in January of 2023," but then in September 2023 had "two breakthrough

23  seizures." *Id.* Plaintiff also contends that a claimant's testimony cannot be rejected solely on the

1    absence of corroborating objective medical evidence, citing *Rollins v. Massanari*, 261 F.3d 853,

2    857 (9th Cir. 2001).  But the ALJ did not rely solely on the absence of medical evidence

3    supporting a greater frequency of seizures; she relied on Dr. Murthy's report.  *See Smartt*, 53

4    F.4th at 498 ("When objective medical evidence in the record is *inconsistent* with the claimant's

5    subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.").  And the

6    part of *Rollins* that Plaintiff cites acknowledges that "[w]hile subjective pain testimony cannot be

7    rejected on the sole ground that it is not fully corroborated by objective medical evidence, the

8    medical evidence is still a relevant factor in determining the severity of the claimant's pain and

9    its disabling effects."  261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)).  Based on the record

10   as presented by the parties, the ALJ's stated reliance on Dr. Murthy's report is a specific, clear,

11   and convincing reason for rejecting Plaintiff's symptom testimony.

12         2.      Left side limitations

13         Plaintiff testified that he has left-hand limitations and left side numbness (which the

14   Court considers together as "left side limitations") that contribute to his inability to stand for

15   more than 15 minutes and his need to lie down daily.  As an initial matter, it is not entirely clear

16   if these symptoms are chronic, or if they occur only after a seizure.  Plaintiff's testimony

17   generally suggests that these limitations are primarily related to the onset of a seizure:

18         Q      And if you know, what happens to you during a seizure?

19         A      My tongue swells up and then my whole left side goes numb, my left arm,
                  my left leg.  Everything just kind of numbs up.
20
         Q      Okay.  Do you fall or you have to sit down, or what do you have to do when
21                the seizures occur?

22         A      I have – I have fell a couple times, but most of the time I have to sit down
                  or lay down and take naps.
23
         Q      All right.  How do you feel after the seizure's done?

ORDER AFFIRMING THE COMMISSIONER'S
FINAL DECISION - 6

A      I'm weak – would be weak.  Most of the time it takes me a couple days to get back up on my feet.

Q      And after the seizure, how long do you have to lay down and nap for before you feel good enough to kind of walk around?

A      Oh, it's at least a couple hours.

Q      When you say a couple hours, is that two, is that four?

A      Probably two, two and half hours.  There's some days that it take – they will keep me down all day.

Q      Okay.  And then what's going on with your left side now?

A      *I just have numbness.  I'm real weak ever since my stroke*[1] *and seizures.* I just have real numbness on my left side, my whole left side just goes numb, and I have to sit down constantly, and then try to stand up.  I can't walk too far, I can't do any of it.  It just makes me flat out sick.  I have to lay down all the time.

Q      How long can you stand at one time?

A      Maybe 15 minutes, if that.

AR 38–39 (emphasis added).

But parts of Plaintiff's testimony support chronic left side limitations.  For example, in the italicized portion above, he testifies "since my . . . seizures," which one could interpret as describing long-lasting symptoms.  AR 39.  He also testified that he drops things with his left hand almost every day, AR 40, and that he spends "four to five hours" lying down during the day because his "left side goes numb, and so it's just uncomfortable."  AR 42.

The Court considers only the ALJ's rejection of Plaintiff's testimony about chronic left side limitations because she credited Plaintiff's testimony about post-seizure left side limitations:

Any left side body weakness experienced as a post-seizure manifestation is accounted for in the residual functional capacity finding that he would be absent

---

[1] The ALJ found that "evidence does not support the claimant's allegation of stroke," and Plaintiff does not challenge this finding on appeal.  AR 23.

ORDER AFFIRMING THE COMMISSIONER'S
FINAL DECISION - 7

one day per month.  His neurologist reports post-seizure left body weakness lasting about a day, with seizures occurring zero to once a month [citing AR 507–08].

AR 23.  And Plaintiff does not characterize the ALJ's decision as rejecting his testimony about post-seizure manifestations.  *See* Dkt. ## 10 at 9–10; 15 at 6.  The Court raises this discrepancy not only to clarify the precise issue on appeal but also to underscore the fact that Plaintiff's testimony about chronic left side limitations is sparse.

The ALJ found that "[t]here is no evidence to support [Plaintiff's] allegations of left hand limitations."  AR 23.  The ALJ relied on two sources to support Plaintiff's lack of left-hand limitations.[2]  First, she cited an October 20, 2022 progress report by Dr. Murthy observing "5/5 muscle power in all major muscle groups of the 4 extremities."  AR 407–08.  Second, she cited a January 17, 2023 progress report by Dr. Murthy observing that although Plaintiff's wife stated that he has "persistent weakness on the left side," Dr. Murthy noted no weakness in an initial exam.  AR 398.  The ALJ similarly rejected his testimony about left side numbness that contributes to an inability to stand for more than 15 minutes and a need to lie down daily because there was "no evidence" to support it.  AR 23.  The ALJ acknowledged that Plaintiff has "slightly diminished motor strength of the left ankle" from a November 2022 left ankle fracture, but that "muscle, strength and sensation has otherwise been full."  AR 23.  The ALJ again relied on the October 20, 2022 progress report by Dr. Murthy, AR 407–08, and a November 6, 2023 assessment observing that "He has got good mobility. He has got 4+/5 strength."  AR 557.

The ALJ provided specific, clear, and convincing reasons to reject Plaintiff's testimony about chronic left side limitations.  As discussed *supra* Section III.A.1, inconsistency with medical records suffices to reject a claimant's testimony if the overall record does not strongly

---

[2] Plaintiff again relies on *Rollins*, 261 F.3d at 857, to contend that "an ALJ may not reject subjective symptom testimony solely based on the absence of corroborating objective medical evidence." Dkt. # 10 at 9–10.  The Court rejects this contention for the same reasons discussed *supra* Section III.A.1.

1    support it.  Plaintiff cites a September 28, 2023 progress report by Dr. Murthy that observed,

2    "Questionable 5-/5 strength of LUE [left upper extremity]."[3]  AR 457.  He also cites a June 8,

3    2023 assessment observing that he has "LE [left extremity] weakness."[4]  AR 569.  But these

4    isolated instances do not sufficiently support chronic left side limitations, especially because they

5    were observed shortly after Plaintiff's reported seizures on September 7, 2023, and May 24,

6    2023.  AR 507.  The ALJ's rejection of Plaintiff's sparse testimony about chronic left side

7    limitations is sufficiently convincing because it is based on inconsistent medical records and the

8    lack of other medical evidence.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

9    1196–97 (9th Cir. 2004) (affirming an ALJ's credibility determination based on medical

10   opinions undermining the claimant's testimony and the lack of medical evidence supporting the

11   claimant's claims).

12       3.       Anxiety, focus, and concentration

13       Plaintiff's testimony about his anxiety, focus, and concentration is also minimal.[5]  When

14   asked about his anxiety, Plaintiff testified that he is "claustrophobic," and cannot walk anywhere

15   that he wants to go or "do any physical things."  AR 41.  Plaintiff also testified that he "lose[s]

16

17

---

18   [3] Plaintiff also cites the same November 6, 2023 assessment relied on by the ALJ, AR 557, but it is unclear how it supports his position.

19   [4] The assessment also observes that he has "poor ankle mobility," "poor balance," and "poor
20   independence with functional mobility," but says that these symptoms are consistent with his ankle
     fracture from November 2022.  *See* AR 569.  Thus, the Court does not construe this assessment as very
21   probative of Plaintiff's chronic left side limitations.

     [5] Plaintiff summarizes his testimony about his mental limitations as follows:

22              In regard to his mental status, Plaintiff testified that he loses focus and
                concentration all the time and that his wife has to help him with things such as
23              finishing sentences or remembering tasks.  [AR] 40.  Plaintiff also testified that he
                has a hard time with self-care tasks such as dressing, feeding, and bathing himself.

     Dkt. # 10 at 9.

1   focus and concentration all the time" and that his wife assists him with various tasks.  AR 40.

2   After summarizing a psychological evaluation of Plaintiff, the ALJ concluded:

3           The limitation to understand, remember, and carry out simple instructions and use
            judgment to make simple work-related decisions adequately accounts for the
4           claimant's mental impairment.  Although he feels anxious if there are too many
            people in a small space this does not generally interfere with day-to-day activities
5           [citing AR 447].   Treatment records reflect intact memory, attention, and
            concentration on mental status exams [citing AR 396, 400, 403, 407, 457].  There
6           is no evidence he has sought any mental health treatment.

7   AR 23–24.

8           Plaintiff contends that the ALJ should have credited his minimal testimony about his

9   anxiety and inability to focus for three reasons, none of which are persuasive.  First, Plaintiff's

10  contention as to his anxiety—for which he cites no authority—is unclear.  He says that he

11  "testified in his function report that he does not travel or go into public places regularly, but

12  when he does, he does not go by himself."  Dkt. # 10 at 10 (citing AR 229).  Thus, he asserts that

13  his "day-to-day activities are likely not affected because he does not go out in public often."  *Id.*

14  Plaintiff might be implying that, contrary to the ALJ's conclusion, his anxiety affects his day-to-

15  day activities because it prohibits him from going out in public.  But the thrust of his contention

16  is not obvious, and, in any event, it is based on speculation.

17          Second, Plaintiff contends that the ALJ erroneously relied on mental status exams to

18  determine his limitations based on his anxiety or inability to focus.  He relies on *Ghanim v.*

19  *Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014), in which the Ninth Circuit held that the ALJ erred

20  in rejecting the claimant's testimony because the ALJ relied on "observations of cognitive

21  functioning during therapy sessions [that did] not contradict [the claimant's] reported symptoms

22  of depression and social anxiety."  The Ninth Circuit explained that although some treatment

23  notes undermined the claimant's testimony, the overall record "consistently reveal[ed] that,

1   despite some occasional signs of improvement, [the claimant] continued to suffer frequent

2   nightmares, hallucinations, social anxiety, difficulty sleeping, and feelings of hopelessness." *Id.*

3   But unlike the claimant in *Ghanim*, Plaintiff does not demonstrate that the record supports his

4   minimal testimony about his mental limitations.[6] *See* AR 40–41.  The mental status exams

5   undermine Plaintiff's testimony about his inability to focus.  And even if these mental status

6   exams do not suffice to reject Plaintiff's testimony that his anxiety prohibits him from, for

7   example, entering public spaces or engaging in daily activities, the ALJ relied on Dr. Higgins'

8   June 2023 psychological evaluation, which, reports, "I would not expect his *psychological*

9   symptoms to interfere with his attendance at work."[7]  AR 23–24 (citing AR 450).  To the extent

10  that Plaintiff suggests that ALJs are prohibited from relying on mental status exams in rejecting

11  symptom testimony, he is mistaken.  *See e.g.*, *James H. v. Berryhill*, 2019 WL 330166, at *6

12  (W.D. Wash. Jan. 25, 2019).

13      Finally, Plaintiff contends that the ALJ erred in relying on the fact that he has not sought

14  any mental health treatment.  Granted, "it is a questionable practice to chastise one with a mental

15  impairment for the exercise of poor judgment in seeking rehabilitation."  *Regennitter v. Comm'r*

16  *of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–300 (9th Cir. 1999) (citation omitted).  But "a

17  claimant's failure to assert a good reason for not seeking treatment . . . can cast doubt on the

18  sincerity of the claimant's [symptom] testimony."  *Molina v. Astrue*, 674 F.3d 1104, 1113–14

19

20      [6] Plaintiff points out that the ALJ summarized observations made in a psychological evaluation
21  by Dr. Higgins, Dkt. # 15 at 5 (AR 23–24, in turn citing AR 448–49), but does not explain how this
    evaluation undermines the ALJ's reliance on mental status exams.  If anything, the ALJ's summary of this
    evaluation suggests that the ALJ considered the entire record before reaching her conclusions.

22      [7] In his reply, Plaintiff says that "An ALJ must show why the abnormal notations in the
    examination are less probative that [*sic*] cited benign observations or examination results," citing *Crystal*
23  *F. v. Acting Com'r of Soc. Sec.*, Case No. 3:23-cv-06100-TLF, Dkt. # 24 at 14 (W.D. Wash. Feb. 7,
    2025).  Dkt. # 15 at 5.  But it is unclear what "abnormal notations" and "benign observations or
    examination results" Plaintiff refers to.

1    (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a) (quotation marks and

2    citation omitted).  Relying on Dr. Higgins's psychological evaluation, Plaintiff contends that "[i]t

3    is entirely possible that his phobias, cognitive, and learning disabilities prevent him from

4    understanding or seeking the appropriate treatment."  Dkt. # 15 at 6 (citing AR 449).  But such

5    speculation does little to undermine the persuasiveness of the ALJ's reasoning, which relies on

6    the same psychological evaluation by Dr. Higgins for the proposition that his anxiety "does not

7    generally cause interference in his day-to-day activities," and mental status reports observing that

8    his memory and concentration are intact.  AR 23–24 (citing AR 400, 447).  And Plaintiff cites no

9    evidence suggesting that the ALJ "simply pick[ed] out a few isolated examples to show that his

10   testimony was inconsistent with the record."  *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir.

11   2021).  Thus, the ALJ's stated reliance on these sources is a specific, clear, and convincing

12   reason for rejecting his symptom testimony.

13   B.    Dr. Murthy's September 28, 2023 report

14          The ALJ did not err in concluding that Dr. Murthy's September 28, 2023 report was

15   partially unpersuasive.  Under the 2017 revised Social Security regulations, an ALJ must

16   articulate the persuasiveness of each medical opinion using several factors, specifically

17   supportability and consistency.  *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(a)).

18   "Supportability means the extent to which a medical source supports the medical opinion by

19   explaining the 'relevant . . . objective medical evidence.'"  *Id.* (quoting 20 C.F.R.

20   § 404.1520c(c)(1)).  "Consistency means the extent to which a medical opinion is 'consistent . .

21   . with the evidence from other medical sources and nonmedical sources in the claim.'"  *Id.* at

22   792 (quoting 20 C.F.R. § 404.1520c(c)(2)).  A reviewing court must uphold the ALJ's

23

1    assessments of these factors if they are supported by substantial evidence.  *See Stiffler v.*

2    *O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024).

3           As pertinent here, the ALJ summarized Dr. Murthy's report as follows:

4           Dr. Murthy opined the claimant's symptoms would occasionally interfere with the
            attention and concentration needed to perform simple work tasks and opined he is
5           only capable of low stress jobs and it was likely seizures would disrupt the work of
            coworkers and he would need more supervision at work than an unimpaired worker.
6           . . He would need to lie down for a few hours when he had a seizure.

7    AR 25 (citing AR 507).

8           The ALJ found Dr. Murthy's opinion only partially persuasive, rejecting part of it:

9           This opinion is partially persuasive.  The need for breaks, the concentration issues,
            and the disruption of coworkers are noted to be related to when the claimant has a
10          seizure, which is zero to one time a month.  The claimant's seizures are accounted
            for in the monthly absences in the residual functional capacity finding.  No basis is
11          provided for the need for more supervision.  There is no evidence the claimant
            would require more supervision than others if in a work setting not involving
12          exposure to hazards.

13   AR 25.

14          1.      Post-seizure manifestations

15          Plaintiff contends that the ALJ erred in finding that his post-seizure manifestations are

16   accounted for in having one absence a month based on his residual functional capacity.  AR 21.

17   He asserts that the ALJ did not consider the supportability and consistency factors in rejecting

18   Dr. Murthy's opinion that he experiences post-seizure "body weakness (face, arm & leg)" that

19   lasts "about 1 day" during which he has "fatigue" and "cannot walk."  AR at 508.  He says that if

20   this part of Dr. Murthy's opinion were credited, his residual functional capacity would include

21   sometimes having two absences a month, which the vocational expert testified might not be

22   tolerated by many employers.  AR 45–46.

23

1    The Commissioner counters that the ALJ did not have to consider that Plaintiff would

2    have fatigue and be unable to walk the day after a seizure because Dr. Murthy's brief notes as to

3    these issues do not constitute a medical opinion.  Dkt. # 14 at 9.  But the Court need not reach

4    this contention because even if the ALJ were required to address these notes, she did so in a

5    manner that is supported by substantial evidence.

6    Although it is not entirely clear, the ALJ's assessment of the supportability factor as to

7    Plaintiff's post-seizure manifestations can "reasonably be discerned."  *Treichler*, 775 F.3d at

8    1103 (citation omitted).  The ALJ summarized that "[t]he need for breaks, the concentration

9    issues, and the disruption of coworkers are noted to be related to when the claimant has a seizure,

10   which is zero to one time a month," and therefore "[t]he claimant's seizures are accounted for in

11   monthly absences in the residual functional capacity finding."  AR 25.  Thus, the ALJ did not

12   necessarily reject Dr. Murthy's observation that Plaintiff's post-seizure manifestations last a day.

13   Rather, the ALJ reasonably concluded that one monthly absence in the residual functional

14   capacity finding sufficiently accounts for Plaintiff's post-seizure manifestations because the

15   report states that Plaintiff does not have a seizure every month.  AR 507.  Substantial evidence

16   supports this conclusion, especially considering the brevity of Dr. Murthy's report.  *See Stiffler*,

17   102 F.4th at 1107 (an ALJ may reject an opinion if it "is brief, conclusory, and inadequately

18   supported by clinical findings") (quoting *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020)).

19   While the ALJ did not assess the consistency factor as to Plaintiff's post-seizure

20   manifestations, this is not grounds for reversal.  In *Woods*, the Ninth Circuit affirmed an ALJ's

21   rejection of a medical opinion based solely on the fact that it was inconsistent with the overall

22   record.  32 F.4th at 792–93 & n.4.  Courts in this District have similarly interpreted *Woods*.  *See*,

23   *Birke D. v. Comm'r of Soc. Sec.*, 2025 WL 2104339, at *2 (W.D. Wash. July 28, 2025) ("[A]n

1    ALJ's finding that a medical opinion lacks either consistency or supportability is enough to find

2    an opinion unpersuasive."). The Court recognizes that this may appear to be at odds with the

3    language of the regulations as quoted in *Woods* itself: "[W]e will explain how we considered the

4    supportability *and* consistency factors for a medical source's medical opinions." 32 F.4th at 792

5    (quoting 20 C.F.R. § 404.1520c(b)(2)) (emphasis added). But the Court is bound by Ninth

6    Circuit precedent, and Plaintiff does not provide a legal basis for departing from *Woods*.

7            2.      Need for supervision

8            Second, Plaintiff contends that the ALJ erred in concluding that "[t]here is no evidence

9    the claimant would require more supervision than others if in a work setting not involving

10   exposure to hazards." AR 25. Plaintiff asserts that the ALJ should have considered Dr.

11   Murthy's opinion that during and immediately after one of his seizures (for which he has less

12   than a minute warning), others must "[c]lear the area of hard or sharp objects," "[l]oosen tight

13   clothing," "[p]ut something soft under [his] head," and "[r]emove [his] glasses." AR 507–08.

14   And after a seizure, others must turn him "on side to allow saliva to drain from mouth." AR 508.

15           But again, the ALJ recognized that "the disruption of coworkers are noted to be related to

16   when the claimant has a seizure, which is zero to one time a month," and that his "seizures are

17   accounted for in the monthly absences in the residual functional capacity finding." AR 25. The

18   ALJ then explained, "No basis is provided for the need for more supervision." AR 25. Thus, the

19   ALJ considered Dr. Murthy's opinion as to Plaintiff's need for coworkers to assist him during a

20   seizure; she did not reject this part of the report. And Plaintiff appears to acknowledge that the

21   ALJ considered the supportability factor in finding that there was "no evidence" to support his

22

23

need for more supervision.[8]  AR 25.  The ALJ's assessment of this factor is supported by

substantial evidence because the only part of Dr. Murthy's report addressing supervision at work

apart from instances in which he has a seizure is a checkmark in a "Yes" box in response to a

question asking, "Is it likely that this patient would need more supervision at work than an

unimpaired worker?"  AR 509; *see Ford*, 950 F.3d at 1155 ("While an opinion cannot be rejected

merely for being expressed as answers to a check-the-box questionnaire, the ALJ may

permissibly reject check-off reports that do not contain any explanation of the bases of their

conclusions.") (cleaned up).  And as discussed *supra* Section III.B.1, the ALJ was not required to

also address the consistency factor to reject part of Dr. Murthy's report.

## IV
### CONCLUSION

For these reasons, the Court AFFIRMS the Commissioner's final decision, and

DISMISSES this case with prejudice.

Dated this 5th day of September, 2025.


John H. Chun
United States District Judge

---

[8] *See* Dkt. ## 10 at 6 ("[W]hile the 'supportability' factor was considered, the ALJ fails to analyze the 'consistency' factor of Dr. Murthy's opinion."); 15 at 3 ("[T]he ALJ's mention of a lack of explanation for the recommendation for extra supervision at work does not constitute 'consistency' reasoning, but rather 'supportability' of the opinion.").

ORDER AFFIRMING THE COMMISSIONER'S
FINAL DECISION - 16